We move to the fifth case this morning, Healy v. Metropolitan Pier & Exposition Authority. May it please the Court, Sean Morales-Doyle on behalf of the plaintiffs. In Levadus v. Bradshaw, the United States Supreme Court warned that the sensible acorn of Section 301 preemption recognized in Lucas Flower should not be allowed to become a sufficiently mighty oak to supply cover. And this is a case where Section 301 preemption has been allowed to become that sufficiently mighty oak. It is being used to provide cover. It is a doctrine which was created in order to guard stable labor-management relations and further federal labor policy. And here it's being used to provide cover for a government entity that has interfered in labor-management relations, flouting and undermining federal labor law and policy along the way. The district court did not engage with the purposes of Section 301 preemption and whether they are being served explicitly, saying whether or not dismissal in this particular case advances the policies behind LMRA preemption, the court is bound to follow the Seventh Circuit's determination. The plaintiff's position here is that the Seventh Circuit's precedent shows that, in fact, Section 301 preemption is to be applied in accordance with the principles that it's meant to serve. It is not a formalistic rule. Section 301 preemption, of course, is not set forth in Section 301. This is not taken from the statutory language of the Labor Management Relations Act, but is instead a court-created doctrine that's meant to serve certain purposes. Suppose we were to agree with you that none of the problems that are identified by Lucas-Flower could happen in this particular case if the district court were to review it. Isn't there a value to having a per se rule that state law claims which require interpretation of CBAs must be preempted? I don't think there's a value in a formalistic rule. I think there's a value in setting forth principles that will make very clear how the doctrine is to be applied, and I think that those principles have been set forth by the precedent. But I don't see a value in having a formalistic rule that applies regardless of whether or not it serves those principles. And I think that the case law suggests that that is the way this doctrine should work. For instance, in Lingle, the Supreme Court talks about cases where a state law claim depends in some part on the interpretation of a CBA. And Lingle says that doesn't mean it's preempted. Instead, the interpretation of the CBA will be done under federal law, and a separate state law analysis that does not turn on the agreement can be conducted with regard to the rest of the case. And we submit that this is a case not like Lingle in that the touching on the collective bargaining agreement is passing and tangential, but rather that the application of the state law claim in this case actually no longer requires interpretation of the collective bargaining agreement once that is being conducted under Section 301 as it was in this case and as it was going to be done in this case. This is a case where the district court was necessarily going to be interpreting the collective bargaining agreement and, in fact, did engage in an interpretation of the collective bargaining agreement. That was happening, and it was happening under federal law. It was happening pursuant to Section 301. That is the worry that drives Section 301 preemption, that some state law claim is going to lead a district court to interpret a collective bargaining agreement when that wouldn't be proper. We don't have that concern here. And that is the situation that this court suggested might allow for proceeding on a claim under the State Tort of Intentional Interference with Contract in both Brzezinski and Kimbrough. In those cases, the court said that if you can avoid that problem, then there's no purpose of federal labor policy being served by putting Section 301 preemption into effect in order to preempt the case. The court said successful invocation of Section 301 would leave a plaintiff remedy list without advancing any federal labor policy that we can think of. That concern might be accommodated by referring any interpretive issues to arbitration with the suit to abide by the arbitration. Of course, this case presents even fewer concerns with regard to that issue, because there was no question of whether this case should go to arbitration. The arbitral bar had been lifted because we were pursuing a hybrid Section 301 claim. The effect of applying Section 301 preemption in this case is to allow a government entity, MPEA, to interfere with labor management relations in a way that just shouldn't happen without any consequences. The CBA provided for a fair method for hiring at McCormick Place, and MPEA intervened in order to reinstate the corrupt and opaque old boys system that had previously existed at McCormick Place. No principle of labor law is served by saying MPEA cannot be held responsible for those actions, and Section 301 does not say that Illinois law cannot prohibit that sort of conduct by government bodies like MPEA. The question here is whether or not Section 301 should be applied without an eye to policy and simply following rules that say once the CBA comes into play, then Section 301 preempts the case. And we submit that that is neither serving the purposes of Section 301, nor following the precedent set forth by the United States Supreme Court or the Seventh Circuit. We ask that the doctrine be applied in a prudential manner in order to make sure that parties like MPEA can't come and interfere with labor management relations, undermine the purposes of a collective bargaining agreement, and do damage to the system of industrial self-governance that's set up by federal labor law. But wouldn't a district court that was addressing the tortious interference issue eventually need to address the conduct in terms of Illinois law, thus creating the risk of conflicting rulings state by state? No. Our position is that the district court would interpret the collective bargaining agreement in accordance with federal law. The district court, in fact, did do that in this case. And that is the holding in Lingle that in a case where the collective bargaining agreement is at issue but there is a separate state law analysis that might hinge in part on that interpretation, the interpretation of the collective bargaining agreement is done pursuant to federal law and then the independent state law analysis is done in accordance with state law. Here, there is one element of the tort of intentional interference, which is the breach of the contract actually occurred. That was and would be decided under federal law. The remaining elements of the tort would then be independent of that question and could be decided under state law without any risk of multiple interpretations of the collective bargaining agreement. The fact is, and I don't mean to be a broken record, but the district court did interpret the collective bargaining agreement here. It was already happening. There's just no question or no concern that that interpretation was going to have some ill effect if we were allowed to proceed in our claim against MPEA because the interpretation was happening anyway. I'd like to reserve my remaining time for rebuttal if I may. All right. Thank you. May it please the court? Counsel? My name is Michael Warner and I represent the Defendant Eppley Metropolitan Peer and Exposition Authority. It's an initial matter. Before you begin. Yes. What deters a powerful authority like the peer authority from doing what the plaintiffs accused it of doing, inducing employers to breach a collective bargaining agreement? Your Honor, with all due respect. Oh no, never start that way. I'm not sure. With all due respect, it usually means with no respect. No, I apologize. The deterrent, first of all, I think that presumes that there was something tortious or unlawful here. The fact is under the Supreme Court's decision, decisions in this circuit's decision, the fact that a party, an outsider to collective bargaining agreement, may do something that this court doesn't like, that the parties to the agreement doesn't like. The court in Granite Rock, the Supreme Court has held very clear, that is not an issue that the court should be concerned with when looking at Section 301 preemption. Similarly, in Brzezinski and Kimbrough, this court has also made clear that this is under federal waiver policy. It's the fact that given the framework of the collective bargaining process and the federal framework that's surrounding that, that there may very well be actions by outside parties that have impact on the collective bargaining agreement that people don't like, that the court might not like, that because of the way the federal framework is set up, there may not be a judicial remedy. And that is the case here, and that's well established by precedents in this circuit and the Supreme Court. Now the one thing I completely agree with Mr. Morales-Doyle on, is that the principles of Section 301 preemption should be applied within the principles that it is meant to serve. Those principles are directly served in this case. In Lucas-Flower, the Supreme Court articulated those principles as follows. The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law, which frustrates the effort of Congress to stimulate the smooth functioning of that process, thus strikes at the very core of federal labor policy. Let's look at the right at issue in this case. The only right that plaintiffs contend was potentially violated is a right contained in a collective bargaining agreement. And it's a provision in the collective bargaining agreement that governs how work is going to be distributed among members of a bargaining unit, among various employers to that collective bargaining agreement. There is no issue that is more fundamental to the collective bargaining agreement, except perhaps wages, than how work is going to be allocated among members of a bargaining unit. So right there, by definition, you are implicating something that is at the core of federal labor policy. And the decisions in this circuit recognize that. This case is controlled by the holdings, not the dicta, the holdings in the Kimbrough and Brzezinski cases. Kimbrough holds that a state law claim for tortious interference is preempted by Section 301. Brzezinski holds, more generally, that absent potentially incredibly unique circumstances, other tort claims are also preempted. And let's look at what Brzezinski actually says, what Judge Posner's dicta, and I stress it's dicta in Brzezinski, actually says. Brzezinski was a case where the plaintiffs alleged a state right of privacy claim based upon allegedly wrongful video surveillance. That claim under Brzezinski was preempted by Section 301 because given the management rights clause in that collective bargaining agreement, there was a possibility that the adjudication of that claim, a claim then on its face that didn't really implicate any labor policy, might implicate the collective bargaining agreement in that case. Now Judge Posner, in his decision, did raise the possibility that if the plaintiffs had, rather than going straight to federal court, tried to submit this issue to the collective bargaining process for decision by an arbitrator, not to necessarily to interpret the contract, but to look at whether the collective bargaining agreement was even implicated by that right to privacy claim, then maybe once the arbitration process determined that okay, this case really has nothing to do with the agreement, the labor agreement here, then and only then could the case proceed. Now this is obviously not that case because again, unlike Brzezinski, where you're looking at a right that exists under state law, completely independent of the collective bargaining agreement, the only right at issue in this case comes from the terms of the collective bargaining agreement. There's no way around that. Kimbrough, which applied Brzezinski to a tortious interference claim, makes this abundantly clear. In that case, Judge Posner referred back to his dictum, Brzezinski, and said of course there's still this theoretical possibility out there, but he held in Kimbrough that that possibility was foreclosed. Actually, he didn't do it by himself. He had two other judges with him. Correct, correct. The court held that the tortious interference claim in that case was barred because it was inevitable that if the case went to trial, the collective bargaining agreement would be brought into the suit. That's the same scenario we have here. If a case against MPEA were litigated and were tried, there's no way around it. You're discussing and you're interpreting the collective bargaining agreement. Now, plaintiffs offer the argument that, well, that's not a concern here because the court already interpreted the collective bargaining agreement in the context of the claims against the other parties. But that really doesn't address the issue and solve the problem. First of all, MPEA was not a party to that proceeding. There'd be due process concerns giving preclusive effect to that ruling. So if that ruling is entitled to any weight at all, it's maybe one of precedent or persuasive effect. But if this case were remanded to Judge Kendall, he would still be interpreting the collective bargaining agreement even if he says, I agree with what I said before. Judge Kendall is a woman, so try she. You're right, correct. You're right. Judge Kendall would still be interpreting the collective bargaining agreement even if it's nothing more than, well, I agree with my prior opinion. That's still an interpretation of the collective bargaining agreement. The Supreme Court precedent forecloses this case as well. Post Brzezinski and Kimbrough, the Supreme Court in Granite Rock cited Brzezinski and Kimbrough favorably noting that Section 301 preempted or Section 301 did not provide for a federal cause of action for tortious interference. It was a tort statute. The Supreme Court precedent also holds that the preemptive effect of Section 301 goes beyond simple breach of contract suits. It preempts cases where regardless of what name you put on the claim, a court is going to have to interpret the collective bargaining agreement. That is what would have to happen here if this case were litigated against MPA, and for that reason the district court and Judge Kendall issued the correct decision, and that decision should be affirmed. Thank you, Your Honor. Thank you, Counsel. You have three minutes, Counselor Brubeck. Thank you. As to your initial question, Judge Ropener, about deterrence, I think that that's a very good question. I don't think that there is any deterrence left to MPA to going around and interfering with collective bargaining agreements. I think MPA occupies an important position in running McCormick Place, and they, as a result of this case, are left free to interfere with the labor management relations of other people operating within McCormick Place without any consequences, and we think that's a problem. We don't think that's the purpose of Section 301. We recognize, of course, that occasionally that may be the result of Section 301, but I think that the Seventh Circuit in Kimbrough and Brzezinski makes very clear that that doesn't serve the purposes of Section 301, and if it can be avoided, why don't we avoid it? And here this case presents an opportunity to avoid it because, unlike in Kimbrough and unlike in Brzezinski, the plaintiffs in this case did pursue their claims in a way that allows for this issue to be addressed. In Brzezinski, I disagree with counsel that the question that was going to be left to the arbitrator was not a question of interpreting the CBA. It was. It was to decide whether or not the management rights clause in the CBA allowed the employer to do this thing, and same in Kimbrough. There was a question of interpretation of the collective bargaining agreement, and the plaintiff in Kimbrough simply didn't pursue a grievance if that's what was necessary. In this case, the plaintiffs did file grievances. They did attempt to use the arbitration process. It wasn't available to them because of the breach of the duty of fair representation, which I think is another important point. The MPEA in this case, the defendant, has not just stepped into the contract and gotten in the way of the contract being performed, but has actually undermined the relationship between the union and the employers in a very fundamental way by also interfering with the duty of the fair representation. This is a case where the system of self-governance set forth by federal law has been entirely undermined by MPEA, and they are being allowed to get away with that without any consequences, and that can't be the purpose of Section 301 preemption. The last point made by counsel was that the problem here would be that we would end up having to have an interpretation of the collective bargaining agreement by the district court. Of course we would. That did happen. That was going to happen regardless, and I don't agree that there would be any due process concerns. We are asking that MPEA be allowed back into the suit in order to litigate the question. The question was left to a trial because it was not fully resolved at summary judgment. This was a case where a jury was actually going to decide this question. There's just not a concern that some arbitrator should have had to hear it first, and there's not a concern that MPEA wouldn't be heard on these points. We welcome MPEA back into the case to be heard on these points. For this reason, we'd ask that the court reverse the decision of the district court dismissing MPEA from the case and allow us to proceed on our claims. Thank you. Thank you, counsel. Thanks to both counsel. The case is taken under advisement.